ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORLANDO SOTOMAYOR DOMÍNGUEZ<br><br>Recurrente<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>Recurrido | KLRA202400314<br><br><br>cons.<br><br><br>KLRA202400315 | *Revisión Judicial* procedente de la Comisión de Investigación, Procesamiento y Apelación (CIPA) |
| KAREN PIERANTONI QUIRÓS<br><br>Recurrente<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>Recurrido | | Casos Núm.:<br>24P-16 y 24P-15<br><br><br><br>Sobre:<br>Expulsión |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de agosto de 2024.

Las partes recurrentes, el Sr. Orlando Sotomayor Domínguez (señor Sotomayor Domínguez) y la Sra. Karen Pierantoni Quirós (señora Pierantoni Quirós), comparecen ante nos mediante sendos recursos de revisión judicial. El señor Sotomayor Domínguez solicita la revocación de la *Resolución* en el caso 24P-16; y la señora Pierantoni Quirós peticiona el mismo remedio contra la *Resolución* dictada en el caso 24P-15. Ambas determinaciones administrativas fueron emitidas el 9 de abril de 2024 y notificadas el día 24 siguiente, por la Comisión de Investigación, Procesamiento y Apelación (CIPA). En éstas, la CIPA decidió desestimar con perjuicio las apelaciones incoadas por los recurrentes. En consecuencia, en las dos instancias, prevalecieron las destituciones

Número Identificador

SEN2024_____

de los puestos públicos como agentes que los recurrentes ocupaban con la parte recurrida, Negociado de la Policía de Puerto Rico (Negociado).

Anticipamos que, por los fundamentos que expondremos, revocamos la *Resolución* del caso 24P-16 y la *Resolución* del caso 24P-15.

## I.

### KLRA202400314
### Orlando Sotomayor Domínguez

Surge de los autos que, el 13 de junio de 2023, notificada el 15 de junio de 2024, el Cnel. Antonio López Figueroa (coronel López Figueroa o Comisionado del Negociado), emitió la *Notificación de Suspensión Sumaria Nunc Pro Tunc de Empleo Resolución de Cargos* al señor Sotomayor Domínguez.[1] En el referido documento, se indicó que, el 28 de febrero de 2023, se realizó un proceso de detección de sustancias controladas; y la muestra del recurrente reflejó un resultado "positivo a metabolito de marihuana verificado".

Conforme se desprende de la comunicación, el 8 de junio de 2023, el Dr. Carlos Robles Mora (doctor Robles Mora), médico revisor oficial, entrevistó al señor Sotomayor Domínguez, con el fin de "auscultar la posibilidad de alguna razón médica que justificara legalmente el resultado positivo corroborado". Según el galeno, éste no encontró justificación médica alguna. Entonces, el Comisionado del Negociado señaló que la conducta del recurrente era incompatible con sus funciones, por lo que lo suspendió sumariamente de empleo con la intención de expulsarlo del puesto. Al señor Sotomayor Domínguez se le imputó ser "usuario de sustancias controladas ilegales en el empleo", en violación a la Ley Núm. 78 de 14 de agosto de 1997, *Ley para reglamentar las pruebas*

---

[1] Apéndice KLRA202400314, págs. 9-13. Inicialmente, la suspensión fue de empleo y sueldo, por lo que se corrigió a una suspensión de empleo solamente Véase, Apéndice KLRA202400314, págs. 5-8.

*para la detección de sustancias controladas en el empleo en el sector público*, 3 LPRA sec. 2501 *et seq.* (Ley 78);[2] así como del Artículo 5 del *Reglamento del programa para la detección de sustancias controladas en funcionarios y empleados de la Policía de Puerto Rico*, Reglamento 6403 de 8 de marzo de 2002, el cual declara como "irremediablemente incompatible" el uso de sustancias controladas con todo cargo en la Policía de Puerto Rico, por ser ésta una agencia de Seguridad Pública.[3] Igualmente, imputó la comisión de las siguientes faltas, estatuidas en el Artículo 14 del *Reglamento de personal de la Policía de Puerto Rico*, Reglamento 4216 de 11 de mayo de 1990, según enmendado por el Reglamento 9001 de 29 de agosto de 2017:

> **Falta Leve número 1:** Demostrar ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades. (Primera sanción: 5 días)
>
> **Falta Grave número 20:** Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa. (Primera sanción: Expulsión)
>
> **Falta Grave número 29:** Incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía. (Primera sanción: 40 días)

---

[2] La *Notificación* citó el Artículo 2, *Exposición de Motivos*, de la Ley 78; véase, 3 LPRA sec. 2501.

[3] El Artículo 5 del Reglamento 6403, *Política Pública,* dispone en parte:

> .       .       .       .       .       .       .       .

> El uso ilegal de Sustancias Controladas por los funcionarios y empleados de la Policía de Puerto Rico, en o fuera del trabajo es irremediablemente incompatible con el desempeño efectivo de las funciones y deberes del puesto o cargo y menoscaba la eficiencia e integridad del Servicio Público, además de constituir una práctica contraria a la ley, por lo cual se declara irremediablemente incompatible con el uso de sustancias controladas, todo puesto o cargo en la Policía de Puerto Rico, por ser esta una agencia de Seguridad Pública.

Cabe señalar que el 27 de abril de 2023 se promulgó el *Reglamento sobre detección de sustancias controladas en el Departamento de Seguridad Pública*, Reglamento 9454, por virtud de la Ley Núm. 20 de 10 de abril de 2017, *Ley del Departamento de Seguridad Pública de Puerto Rico*, 25 LPRA sec. 3501 *et seq.* No obstante, en el Artículo IV del Reglamento 9454, *Aplicabilidad*, **excluye la aplicación de esta reglamentación al Negociado de la Policía de Puerto Rico**, para no afectar el proceso de la Reforma, en alusión al Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico de 17 de julio de 2013 en el caso federal *US v. Commonwealth of Puerto Rico, et al.*, 3:12-cv-2039.

En autos consta una directriz del Departamento de Seguridad Pública (DSP-0101-01-2023-03), emitida el 11 de julio de 2023, en la que se cita la disposición antes referida para reafirmar la prohibición del cannabis medicinal en el Negociado. Apéndice KLRA201400314, págs. 17-18; Apéndice KLRA202400315, págs. 11-12.

**Falta Grave número 31:** Incurrir en conducta que constituya delito grave o menos grave que implique depravación moral. Para efectos de esta falta no es necesario la radicación y el progreso de cargos criminales, sólo basta que la investigación administrativa refleje que el querellado incurrió en una conducta tipificada como delito grave o menos grave que implique depravación moral. (Primera sanción: Expulsión)

El 23 de junio de 2023, el recurrente compareció ante la vista informal.[4] Allí presentó evidencia de su tratamiento médico prescrito, concerniente a la licencia de cannabis medicinal. El 7 de agosto de 2023, notificada el día 17 siguiente, el coronel López Figueroa suscribió la *Resolución de Final* [*sic*],[5] mediante la cual expulsó al señor Sotomayor Domínguez de su empleo, con efecto inmediato.

Disconforme con la determinación administrativa, el recurrente acudió a la CIPA, mediante un recurso apelativo.[6] En éste, solicitó "lo antes posible" la celebración de una vista. Afirmó que, durante la vista administrativa informal, presentó evidencia médica que sustentaba que no cometió las faltas imputadas y que su situación médica no ameritaba una medida tan drástica como la expulsión de su puesto. Apuntó que, al entrevistarse con el doctor Robles Mora, el médico revisor oficial se negó a recibir la evidencia médica que tenía la prescripción de los medicamentos que ocasionaron el positivo de la prueba de dopaje. Abogó a su causa bajo el argumento de una presunta interpretación errónea del ordenamiento jurídico aplicable. Así, pues, solicitó que se decretara el archivo de la Querella 2023-00810 y la devolución de salarios dejados de percibir.

Así las cosas, el Negociado instó, sin unir documentos, una *Moción en solicitud de desestimación y/o resolución sumaria.*[7] Alegó

---

[4] Apéndice KLRA202400314, pág. 16.
[5] Apéndice KLRA202400314, págs. 19-22.
[6] Apéndice KLRA202400314, págs. 23-25.
[7] Apéndice KLRA202400314, págs. 36-42.

por la desestimación de la *Apelación* del señor Sotomayor Domínguez ya que, a pesar de que éste poseía una licencia para el uso de cannabis medicinal, el Negociado recibía fondos federales y no aplicaban las protecciones de la Ley Núm. 42 de 9 de julio de 2017, *Ley para manejar el estudio, desarrollo e investigación del cannabis para la innovación, normas aplicables y límites*, 24 LPRA sec. 2621 *et seq.* (Ley 42), según enmendada por la Ley Núm. 15 de 29 de julio de 2021.[8] Aludió, además, a estatutos federales que proscribían que los funcionarios públicos catalogados como primeros respondedores y clasificados como "law enforcement" poseyeran licencias para el tratamiento de cannabis medicinal.

El 16 de enero de 2024, el señor Sotomayor Domínguez presentó una *Moción en cumplimiento de Orden y en Oposición a solicitud de resolución sumaria.*[9] Ripostó que, por primera vez, el Negociado aludía a la Ley 42; y argumentó que la Ley 78 y el

---

[8] La Ley Núm. 42 de 9 de julio de 2017, *Ley para manejar el estudio, desarrollo e investigación del cannabis para la innovación, normas aplicables y límites*, 24 LPRA sec. 2621 *et seq.*, según enmendada por la Ley Núm. 15 de 29 de julio de 2021, provee un marco regulatorio que permite una alternativa legítima de tratamiento con cannabis para las personas con ciertas condiciones médicas. A su vez, la enmienda de 2021 estableció unas protecciones de empleo para pacientes registrados y autorizados de cannabis medicinal, las cuales deben ser interpretadas liberalmente en favor del paciente. Art. 24 de la Ley 42, 24 LPRA sec. 2626e-1. A esos efectos, se estableció que los pacientes registrados, que se identifiquen ante un patrono como autorizados para el consumo de cannabis medicinal, serán considerados como una categoría protegida para propósito de las leyes de protección de empleo. Además, estatuye que ningún patrono podrá discriminar contra una persona que sea paciente debidamente registrado y autorizado para utilizar cannabis medicinal. Asimismo, el Artículo 29 de la Ley 42, *supra*, dispone que "[e]n caso de que las disposiciones de este capítulo estén en conflicto con las disposiciones de cualquier otra ley estatal, las disposiciones de este capítulo prevalecerán". 24 LPRA sec. 2626h.

Sin embargo, de conformidad con el Inciso (c) del Artículo 24 de la Ley 42, estas protecciones laborales no cobijarán a un paciente registrado y autorizado de cannabis medicinal cuando el patrono logre establecer, por preponderancia de la prueba, cualquiera de las siguientes condiciones:

    (1) La utilización de cannabis medicinal representa una amenaza real de daño o peligro para las personas o propiedad; o

    (2) La utilización de cannabis medicinal por el o la paciente registrado(a) y autorizado(a) interfiere con su desempeño y funciones esenciales de trabajo; o

    (3) La utilización de cannabis medicinal por el o la paciente registrado(a) y autorizado(a) expone al patrono a la pérdida de alguna licencia, permiso o certificación relacionada con alguna ley, reglamentación, programa o fondo federal; o

    (4) El o la paciente registrado(a) y autorizado(a) ingiera o posea cannabis medicinal en su lugar de trabajo y/o durante horas laborales sin autorización por escrito del patrono.

[9] Apéndice KLRA202400314, págs. 43-50.

Reglamento 6403 no estaban atemperados a los nuevos lineamientos sobre el cannabis medicinal. Expuso, además, que los hechos no se ajustaban a las faltas imputadas, por lo que existían controversias que impedían la resolución sumaria del caso.

El 9 de abril de 2024, notificada y archivada en autos el 24 de abril de 2024, la CIPA emitió la *Resolución* impugnada.[10] En ésta, acogió la postura del Negociado y la hizo formar parte del dictamen administrativo. En particular, basó su determinación en el Artículo 16 (A), *Medidas Disciplinarias*, del Reglamento 6403, el cual reza como sigue: "Se declara irremediablemente incompatible con el uso de Sustancias Controladas, todo puesto o cargo en la Policía de Puerto Rico como Agencias de Seguridad Pública". Al entender que no había controversia, ya que "el apelante de forma tácita [había] admitido el uso de sustancias", desestimó con perjuicio la *Apelación* del recurrente.

El 3 de mayo de 2024, el señor Sotomayor Domínguez incoó una *Moción de reconsideración.*[11] Negó la referida admisión tácita y sostuvo la improcedencia de la desestimación, al amparo del ordenamiento jurídico aplicable. Reiteró que los hechos no eran afines a las faltas que dieron base a la destitución y que el expediente ante el Negociado no fue objeto de revisión por parte del ente apelativo. En respuesta, el 15 de mayo de 2024, notificada y archivada en autos el día siguiente, la CIPA denegó la solicitud de reconsideración del señor Sotomayor Domínguez.[12]

## KLRA202400315
### Karen Pierantoni Quirós

El 5 de junio de 2023, el Comisionado del Negociado remitió a la recurrente una *Notificación de Suspensión Sumaria de Empleo y*

---

[10] Apéndice KLRA202400314, págs. 3-4. En un principio, la CIPA había citado la vista en su fondo para el 24 de abril de 2024. Véase, Apéndice KLRA202400314, pág. 34.

[11] Apéndice KLRA202400314, págs. 51-56.

[12] Apéndice KLRA202400314, págs. 1-2.

*Resolución de Cargos.*[13] En la comunicación, se le imputó la transgresión de la *Exposición de Motivos,* estatuida en el Artículo 2 de la Ley 78, por el uso de sustancias controladas ilegales en el empleo, 3 LPRA sec. 2501; y el Artículo 5 del Reglamento 6403, que establece que la Policía de Puerto Rico es una agencia de Seguridad Pública, por lo que es "irremediablemente incompatible" el uso de sustancias controladas.[14] También se le atribuyó la comisión de las faltas graves 20, 29, 31 y la falta leve 1, según tipificadas en el Artículo 14 del Reglamento 4216, conforme fue enmendado por el Reglamento 9001:

> **Falta Leve número 1:** Demostrar ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades. (Primera sanción: 5 días)

> **Falta Grave número 20:** Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa. (Primera sanción: Expulsión)

> **Falta Grave número 29:** Incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía. (Primera sanción: 40 días)

> **Falta Grave número 31:** Incurrir en conducta que constituya delito grave o menos grave que implique depravación moral. Para efectos de esta falta no es necesario la radicación y el progreso de cargos criminales, sólo basta que la investigación administrativa refleje que el querellado incurrió en una conducta tipificada como delito grave o menos grave que implique depravación moral. (Primera sanción: Expulsión)

Se expuso que, el 28 de febrero de 2023, se realizó un proceso de detección de sustancias controladas y la señora Pierantoni Quirós reflejó un resultado "positivo a metabolito de marihuana verificado". A tales efectos, el 2 de junio de 2023 fue entrevistada por el doctor Robles Mora con el propósito de indagar alguna razón médica que justificara legalmente el hallazgo positivo y éste no encontró ninguna justificación. Por consiguiente, el Comisionado

---

[13] Apéndice KLRA202400315, págs. 5-9.
[14] Refiérase a la nota al calce 3 de esta *Sentencia.*

del Negociado la suspendió sumariamente de empleo con la intención de expulsarla del puesto.

La recurrente compareció a la vista administrativa informal el 16 de junio de 2023, donde explicó las razones por las cuales tuvo que someterse a un tratamiento médico alternativo por un médico licenciado por el Departamento de Salud. Apuntó que la normativa aplicada en su contra no había sido atemperada por la Ley 42. A su vez, la señora Pierantoni Quirós abogó por la falta de evidencia de las faltas imputadas. Así las cosas, el 4 de agosto de 2023, notificada el día 11 del mismo mes y año, el coronel López Figueroa notificó a la recurrente la *Resolución Final de Expulsión.*[15] Mediante ésta, confirmó la expulsión del puesto que ocupaba en el Negociado de la Policía.

No conteste, la señora Pierantoni Quirós presentó una oportuna *Apelación* ante la CIPA.[16] Alegó que, durante la vista administrativa informal, sometió evidencia médica que sustentaba que no cometió las faltas imputadas y que su situación médica no ameritaba la expulsión de su puesto. Por lo tanto, solicitó una vista administrativa, el archivo de la Querella 2023-00778 y la revocación de la determinación del Negociado y el pago de salario y haberes.

El Negociado presentó una *Moción en solicitud de desestimación y/o resolución sumaria*, a la que no anejó ningún documento.[17] Sostuvo que, a pesar de que la señora Pierantoni Quirós poseía una licencia para el uso de cannabis como inhibidor para el dolor, no estaba protegida por la Ley 42. Indicó que dicho estatuto contemplaba unas excepciones que excluían a la recurrente de las protecciones laborales. Aludió también a estatutos federales y a la supremacía de los mismos, toda vez que el Negociado recibía

---

[15] Apéndice KLRA202400315, págs. 13-15.
[16] Apéndice KLRA202400315, págs. 16-18.
[17] Apéndice KLRA202400315, págs. 29-35.

fondos federales, por lo que se le exigía que fuera un patrono libre de drogas. Razonó, entonces, que procedía la desestimación y disposición sumaria de la causa apelativa.

Por su parte, la señora Pierantoni Quirós presentó *una Moción en cumplimiento de Orden y en Oposición a solicitud de resolución sumaria*.[18] Reiteró que la Ley 78 y el Reglamento 6403 no estaban atemperados al nuevo ordenamiento sobre el cannabis medicinal. Además, apuntó que el expediente carecía de evidencia para probar las faltas que dieron base a la expulsión. Por ello, sostuvo que estas controversias impedían que el caso se resolviera por la vía abreviada. Añadió que en la petición del recurrido, por primera vez, hizo referencia a la Ley 42, lo que infringía el debido proceso de ley.

El 9 de abril de 2024, notificada y archivada en autos el 24 de abril de 2024, la CIPA emitió la *Resolución* recurrida.[19] Al considerar como una admisión tácita de la señora Pierantoni Quirós el alegado uso de sustancias controladas, la CIPA no halló controversias medulares. Por consiguiente, el ente administrativo, luego de hacer formar parte del dictamen los planteamientos del Negociado, a base del Artículo 16 del Reglamento 6403, que declara irremediablemente incompatible el uso de sustancias controladas con la ocupación de un cargo en el Negociado, desestimó con perjuicio la *Apelación* de la señora Pierantoni Quirós.

Insatisfecha la señora Pierantoni Quirós solicitó infructuosamente la reconsideración del pronunciamiento.[20] Rechazó cualquier admisión tácita y ripostó la desestimación sin la revisión del expediente y en contravención a la jurisprudencia que dicta la doctrina en torno a la drástica sanción. Enfatizó que las faltas de su destitución no hallaban apoyo en los hechos aducidos.

---

[18] Apéndice KLRA202400315, págs. 36-43.
[19] Apéndice KLRA202400315, págs. 3-4.
[20] Apéndice KLRA202400315, págs. 44-49.

Así, el 15 de mayo de 2024, notificada y archivada en autos el 16 de mayo de 2024, la CIPA denegó la petición.

En desacuerdo con las determinaciones administrativas, el 14 de junio de 2024, el señor Sotomayor Domínguez y la señora Pierantoni Quirós presentaron sendos recursos intitulados *Revisión Judicial de Resolución Administrativa de CIPA*; y esbozaron los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación al desestimar con perjuicio la Apelación sobre expulsión, caso número [24P-15 y 24P-16] sin que existiera prueba en el expediente que sustentara las alegaciones del Negociado de la Policía de Puerto Rico.

> **SEGUNDO ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación al confirmar la expulsión del Peticionario dando por probadas unas faltas al Reglamento de Personal de la Policía de Puerto Rico, Reglamento 4216, que no se ajustan con las imputaciones del Negociado de la Policía de Puerto Rico en la Suspensión Sumaria de Empleo y Resolución de Cargos, ni a la prueba que obra en el expediente.

> **TERCER ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación al no resolver la controversia de derecho del caso [24P-15 y 24P-16], en cuanto a si la Ley 42 del 9 de julio de 2017, "Ley Para Manejar el Estudio, Desarrollo e Investigación del Cannabis para Innovación, Normas Aplicables y Límites" (Ley Medicinal) es de aplicación al Negociado de la Policía de Puerto Rico.

> **CUARTO ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación al confirmar la expulsión del NPPR del Peticionario sin tomar en consideración las disposiciones de la Ley 42 del 9 de julio de 2017, "Ley Para Manejar el Estudio, Desarrollo e Investigación del Cannabis para Innovación, Normas Aplicables y Límites" (Ley Medicinal), y al no reconocer que el Peticionario es un paciente con un tratamiento alternativo.

> **QUINTO ERROR:** Erró la Comisión de Investigación, Procesamiento y Apelación al confirmar la expulsión del NPPR del Peticionario basándose en una alegada violación al Reglamento Núm. 6403, Reglamento del Programa Para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Policía de Puerto Rico, del 26 de febrero de 2002, sin tomar en consideración que éste es un paciente con un tratamiento médico alternativo supervisado por un doctor en medicina.

Mediante la *Resolución* de 28 de junio de 2024, ordenamos la consolidación de ambos recursos. Luego de conceder la prórroga solicitada, el 24 de julio de 2024, el Negociado, por conducto de la

Oficina del Procurador General de Puerto Rico, presentó su *Escrito en Cumplimiento de Orden.* Con el beneficio de su comparecencia, estamos en posición de resolver.

**II.**

**A.**

Revisamos la *Resolución* en el caso 24P-15 y la *Resolución* en el caso 24P-16, emitidas por la CIPA, al palio de la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.* La Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el **alcance de la revisión judicial**, dispone que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. Es decir, mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo; que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar; y que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya **lesionado derechos constitucionales fundamentales**. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016). Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tienen la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de

ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024); 603 US __ (2024).[21] Claro está, según ha pautado el Tribunal Supremo federal, aquellas interpretaciones y dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los tribunales y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.,* pág. 2259. Ahora, **el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración**, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift & Co.,* 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo, supra,* pág. 2259.

Al auscultar si ha habido o no lesión a los derechos fundamentales, nuestro norte es la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, la cual dispone que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes". Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. De otra parte, la Constitución de los Estados Unidos de América establece que "[n]inguna persona [...] será privad[a] de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley [...]". Emda. V, Const. EE. UU., LPRA, Tomo 1.[22] Nuestro Tribunal Supremo ha afirmado que **el debido**

---

[21] En *Loper Bright Enterprises v. Raimondo, supra,* resuelto el 28 de junio de 2024, el Tribunal Supremo federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo, supra,* pág. 2274 (Op. Conc. Juez Thomas).

[22] Refiérase también a la Decimocuarta Enmienda de la Constitución federal dispone que "ningún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes". Emda. XIV, Sec. 1, Const. EE. UU., LPRA, Tomo 1.

**proceso de ley es un derecho fundamental** que "encarna la esencia de nuestro sistema de justicia". *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996). "Su prédica comprend[e] los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado". *Amy v. Adm. Deporte Hípico*, 116 DPR 414, 420 (1985). En síntesis, el debido proceso de ley se refiere al "derecho de toda persona a tener un **proceso justo y con todas las debidas garantías** que ofrece la ley, tanto en el ámbito judicial como en el **administrativo**". (Énfasis nuestro). *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012), que cita con aprobación a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Es decir, "el concepto *debido proceso de ley* tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la **procesal**, que se enfoca en garantizar un **proceso justo y equitativo** ante acciones estatales que interfieran con intereses privados". (Énfasis nuestro). *Garriga Villanueva v. Mun. de San Juan*, 176 DPR 182, 196 (2009).

Cónsono con lo anterior, la Sección 3.1 de la LPAUG, 3 LPRA sec. 9641, establece que, en todo procedimiento adjudicativo formal ante una agencia, se salvaguardarán los siguientes derechos: (i) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (ii) **derecho a presentar evidencia**; (iii) derecho a una adjudicación imparcial; y el (iv) **derecho a que la decisión sea basada en el expediente**. Además, en el contexto de los empleados públicos, el alto foro ha reconocido que los servidores del sector que han adquirido un interés propietario en su puesto están cobijados por las garantías del debido proceso de ley, en su vertiente procesal, previo a ser destituidos de su empleo. *Id.*, págs. 196-197, que cita a *U. Ind. Emp. A.E.P. v. A.E.P.*, 146 DPR 611, 618 (1998); *Orta v. Padilla Ayala*, 131 DPR 227, 241 (1992); *Torres Solano v. P.R.T.C.*, 127 DPR 499,

519-521 (1990). A base de lo anterior, de ordinario, se requiere la celebración de una vista informal antes de separar a un empleado público de su puesto. En la audiencia, se debe incluir una notificación adecuada de los cargos en su contra y una descripción de la prueba que posee el patrono. Por igual, durante la vista informal, el empleado tendrá una oportunidad de presentar su versión de los hechos. *Garriga Villanueva v. Mun. de San Juan*, supra, pág. 197 y los casos allí citados, incluyendo a *Cleveland Bd. of Ed. v. Loudermill*, 470 US 532 (1985).

### B.

La Ley Núm. 20 de 10 de abril de 2017, *Ley del Departamento de Seguridad Pública de Puerto Rico*, 25 LPRA sec. 3501 *et seq.*, establece lo siguiente en el Artículo 2.20, *Medidas Disciplinarias*, 25 LPRA sec. 3550:

> El Comisionado determinará por reglamento las faltas administrativas de los miembros del Negociado de la Policía de Puerto Rico que conllevaren medidas correctivas no punitivas y/o acciones disciplinarias. Dichas faltas estarán clasificadas en infracciones, faltas leves o faltas graves. El Reglamento, a su vez, dispondrá el procedimiento aplicable para la investigación y adjudicación, así como las sanciones aplicables a cada tipo de falta.
>
> De no estar conforme con alguna decisión del Comisionado imponiendo algún castigo, el miembro concernido **podrá apelar el caso ante la Comisión de Investigación, Procesamiento y Apelación creada mediante la Ley Núm. 32 de 22 de mayo de 1972**. La apelación deberá presentarse en o antes de treinta (30) días después de la notificación de la determinación final sobre la medida disciplinaria impuesta.
>
> **El Comisionado tendrá autoridad para suspender sumariamente de empleo** a cualquier miembro del Negociado de la Policía de Puerto Rico cuando la conducta del miembro de Policía de Puerto Rico consista en el **uso ilegal de fondos públicos**, si es que aún no se le ha determinado causa para arresto o acusación por un delito grave, o **cuando exista base razonable para creer que este constituye un peligro real y significativo para la salud, vida o moral de los empleados o la ciudadanía**. En tales casos, el Comisionado hará que se formulen los correspondientes cargos administrativos, los cuales investigará y resolverá a la brevedad posible, imponiendo la acción disciplinaria que estime razonable

o disponiendo que vuelva al servicio dicha persona si a su juicio los hechos lo justificaren.

El Comisionado tendrá autoridad para **suspender sumariamente de empleo y sueldo** a cualquier miembro del Negociado de la Policía de Puerto Rico cuando se haya encontrado **causa para arresto o acusación por cometer un delito grave**.

Cuando un miembro estuviere **suspendido de empleo, o de empleo y sueldo, estará inhabilitado para ejercer sus funciones**. Tampoco disfrutará de los derechos y privilegios que por ley se conceden a los policías mientras dure la suspensión. (Énfasis nuestro).

En armonía con lo esbozado, la referida Ley Núm. 32 de 22 de mayo de 1972, *Ley de la Comisión de Investigación, Procesamiento y Apelación* (Ley 32), 1 LPRA sec. 171 *et seq.*, creó la CIPA como un foro apelativo administrativo, llamado a intervenir con exclusividad en los casos en que la parte querellada sea un funcionario de la Rama Ejecutiva estatal o municipal, autorizado para efectuar arrestos. Art. 2 (1) de la Ley 32, 1 LPRA sec. 172 (1). En el ejercicio de sus funciones, facultades y obligaciones, la CIPA está facultada a **realizar cualquier investigación autorizada** por el estatuto, así como **celebrar vistas públicas o privadas**, presididas por cualquier comisionado designado y con **audiencia de las partes interesadas**. Art. 3 (2) (3) de la Ley 32, 1 LPRA sec. 173 (2) (3).

La Ley 32 también autoriza a la CIPA a recibir evidencia para el desempeño de su función apelativa, como parte del proceso administrativo disciplinario iniciado en el Negociado. Refiérase a los Arts. 3-8 de la Ley 32, 1 LPRA secs. 173-178. Esto quiere decir que la CIPA examina la determinación apelada ante su consideración, no sólo a base de la prueba vertida en la vista informal celebrada por el Negociado, sino de la prueba que se presente en la etapa apelativa. Por ello se ha reconocido que la vista ante la CIPA es una especie de juicio *de novo*, en el que el ente administrativo otorga el valor probatorio que a su juicio merezca. Así, pues, la vista que se celebra ante la CIPA "**es propiamente una vista formal**, porque en

ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, y **las determinaciones de hecho de esa agencia están sujetas, únicamente, al limitado ámbito de la revisión judicial**. En ese sentido, es <u>equivalente a un juicio en sus méritos</u>". (Énfasis nuestro). *Ramírez v. Policía de P. R.*, 158 DPR 320, 334 (2003). Es decir, las actuaciones de la CIPA se asemejan a las de un tribunal, debido al poder de adjudicación que le fue delegado. Por tal razón, el examinador o comisionado que presida las vistas debe ajustarse a los principios básicos que rigen la discreción judicial. *Id.*, pág. 340.

Asimismo, el estatuto habilitador establece expresamente que la CIPA, "**luego de celebrar la vista correspondiente**, según lo dispuesto en el Artículo 3, Inciso (3), podrá confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer". (Énfasis nuestro). Art. 2 (2) de la ley 32, 1 LPRA sec. 172 (2).

En lo que atañe al caso de autos en el que examinamos un dictamen administrativo de desestimación, y en consonancia con los principios del debido proceso de ley, el inciso (b) de la Sección 3.7 de la LPAUG, 3 LPRA sec. 9647 (b), dispone expresamente lo siguiente:

.    .    .    .    .    .    .    .

> (b) **Si la agencia determina a solicitud de alguna de las partes y <u>luego de analizar los documentos que acompañan la solicitud de</u> orden o <u>resolución sumaria</u> y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente** de la agencia, que **no es necesario celebrar una vista adjudicativa**, **podrá dictar** órdenes o **resoluciones sumarias**, ya sean **de carácter final**, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia **no podrá dictar órdenes o resoluciones sumarias** en los casos en que (1) **existen hechos**

**materiales o esenciales controvertidos**; (2) **hay alegaciones afirmativas en la querella que no han sido refutadas**; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede. (Énfasis nuestro).

Al respecto, el *Reglamento para la presentación, investigación y adjudicación de querellas y Apelaciones ante la Comisión de Investigación, Procesamiento y Apelación*, Reglamento 7952, promulgado por la CIPA el 1 de diciembre de 2010, contempla la desestimación y la disposición sumaria de las apelaciones ante la consideración de la CIPA. No obstante, el Artículo 26, *Desestimación o disposición sumaria*, distinto a la LPAUG, se limita a establecer lo que sigue:

> La Comisión y/o el Juez Administrativo podrá desestimar o disponer sumariamente de una querella o de una apelación *motu proprio* o a solicitud de parte, de entender que la misma no plantea hechos que justifiquen la concesión de un remedio, o si no habiendo controversia real en los hechos, como cuestión de derecho, procede se dicte resolución a favor de la parte promovente.

> El abogado examinador a quien se le refiera una solicitud de desestimación o de disposición sumaria presentará la misma a la Comisión o al Juez Administrativo para su adjudicación.

La discrepancia entre la precitada disposición reglamentaria y la LPAUG no encuentra apoyo en la Ley 32. El estatuto palmariamente dispone que los reglamentos adoptados por la CIPA, para la realización efectiva de sus funciones, deben ser conformes con lo dispuesto en la LPAUG. Art. 10 de la Ley 32, 1 LPRA sec. 180. Para que proceda una desestimación, la CIPA debe acoger los pronunciamientos procesales y jurisprudenciales atinentes.

### III.

En el primer señalamiento de error los recurrentes plantean que la CIPA incidió al desestimar con perjuicio los recursos apelativos, sin que existiera prueba en el expediente que sustentara las alegaciones del Negociado en cuanto a las faltas imputadas. Ello

así, porque el Negociado no acompañó su petición con ninguna evidencia. Alegan también que la CIPA tampoco concedió una vista evidenciaria ni argumentativa, en violación a su debido proceso de ley. Les asiste la razón.

Los procesos adjudicativos de las agencias administrativas se caracterizan por su flexibilidad y la liberalidad en los tecnicismos procesales. Por ello, las Reglas de Procedimiento Civil, 32 LPRA Ap. V, de ordinario, no aplican a los casos administrativos, salvo cuando sus normas resultan compatibles con la naturaleza de los procesos ante las agencias y sirven para lograr la solución rápida, justa y económica de la controversia. *O.E.G. v. Rodríguez*, 159 DPR 98, 112 (2003).

En torno a esto, la Regla 10.2 de Procedimiento Civil, que versa sobre las mociones de desestimación, establece seis fundamentos para su consideración,[23] entre éstos, el **dejar de exponer una reclamación que justifique la concesión de un remedio**. Ahora bien, debido a la severa sanción de la desestimación, la cual priva a una parte de su *día en corte*, al evaluar una moción de desestimación basada en el aludido fundamento, el juzgador debe tomar como ciertos y de la forma más favorable todos los hechos bien alegados, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *López García v. López García*, 200 DPR 50, 69 (2018); *Colón v. Lotería de Puerto Rico*, 167 DPR 625, 649 (2006); *Roldán Rosario v. Lutrón, S.M., Inc.*, 151 DPR 883, 890 (2000). Sólo procede la concesión de una petición desestimatoria cuando surja con toda certeza de las alegaciones fácticas bien expuestas que la parte no es acreedora de remedio alguno, bajo cualquier estado de hechos que puedan ser

---

[23] Éstos son: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2.

probados en apoyo de su reclamación. *Rivera Sanfeliz v. Junta de Directores,* 193 DPR 38, 49 (2015); *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994).

En la presente causa, al examinar sin ánimo prevenido los expedientes de los recurrentes, resulta patente el incumplimiento por parte de la CIPA al observar la norma procesal que dio base a los dictámenes desestimatorios aquí impugnados. La CIPA no consideró como ciertas las alegaciones de los recursos apelativos sobre cierta evidencia médica que supuestamente exonera a los recurrentes de las faltas imputadas. Obsérvese, por ejemplo, que la falta administrativa grave número 20 del Reglamento 4216, según enmendado por el Reglamento 9001, la cual fue imputada al señor Sotomayor Domínguez y a la señora Pierantoni Quirós, proscribe el uso de drogas, tranquilizantes o estimulantes, "a menos que los mismos sean por prescripción facultativa".

No consta que el ente administrativo haya tenido ante sí evidencia alguna que sostuviera las alegaciones del Negociado sobre las restantes faltas imputadas, porque el recurrido no acompañó su petitorio con ningún documento. Así, el expediente que revisamos está desprovisto de evidencia acerca de la negligencia en el desempeño de los deberes, funciones y responsabilidades; o de la presunta conducta lesiva, inmoral o desordenada; o de la conducta que constituyó delito grave o menos grave que implicó depravación moral. Nótese que, previo a la solicitud desestimatoria del Negociado, el señor Sotomayor Domínguez y la señora Pierantoni Quirós, si bien al palio de una reglamentación anulada (debieron ampararse en el Reglamento 7952), peticionaron copia fiel y exacta de la investigación de la Querella 2023-00810 y de la

Querella 2023-00778, respectivamente.[24] Si bien, la CIPA lo ordenó, no consta en el expediente su cumplimiento.[25]

Por igual, estimamos que el ente adjudicador no ejerció sus funciones delegadas ante la presunta interpretación errónea de los estatutos y reglamentos aplicables, según argüidos por los recurrentes. Tampoco tomó en cuenta los planteamientos de las respectivas oposiciones, en que el señor Sotomayor Domínguez y la señora Pierantoni Quirós adujeron que los hechos de ambos casos no se ajustaban a las faltas imputadas; y que, en la petición de desestimación, por primera vez, el Negociado aludía a la Ley 42.

Es nuestra opinión que la CIPA no debió desestimar, sin más, el recurso presentado por los recurrentes, sin antes, permitir el descubrimiento de prueba solicitado y celebrar una vista evidenciaria y argumentativa para dirimir las controversias materiales de hechos y escuchar las bases legales y jurisprudenciales en apoyo a las posturas del Negociado y de los recurrentes acerca de los estatutos y reglamentos concernidos. La celebración de una vista formal satisface el debido proceso de los recurrentes, toda vez que le brinda a éstos la oportunidad de ser oídos y de presentar evidencia testimonial, documental o pericial a su favor; así como al Negociado para refutarla. Del mismo modo, si el recurrido aspira prevalecer en la procedencia de las destituciones, la audiencia administrativa le permitirá demostrar, por preponderancia de la prueba, la aplicación de alguna de las excepciones concernidas en el Artículo 24 (c) de la Ley Núm. 42, según fueron planteadas en su solicitud de desestimación.[26] Finalmente, es evidente que la ausencia de una vista administrativa tiene el efecto de que ninguno de los dictámenes administrativos

---

[24] Véase, Apéndice KLRA202400314, págs. 29-32 y Apéndice KLRA202400315, págs. 22-25.
[25] Apéndice KLRA202400314, pág. 33.
[26] Véase nota al calce número 8 de este dictamen.

comprenda determinaciones fácticas apoyadas en evidencia sustancial ni conclusiones de derecho; y por ende, la omisión no sólo incumple con la LPAUG[27] sino que repercute en contra de nuestra facultad judicial. Recuérdese que, para persuadirnos, la decisión final de la agencia debe ser el resultado de una consideración rigurosa, razonable y congruente. En estos casos, el escueto pronunciamiento de la CIPA adolece de los elementos esenciales para que podamos ejercer nuestra función revisora.

Al tenor de lo expuesto, procede la revocación de las determinaciones finales de la CIPA en los casos 24P-15 y 24P-16; a los fines de que se lleven a cabo las vistas administrativas suprimidas por vía de sendas desestimaciones improcedentes en derecho. En vista del resultado al que arribamos, es innecesario discutir los restantes errores argüidos por los recurrentes, toda vez que corresponde a la CIPA dirimirlos, en primera instancia.

**IV.**

Por los fundamentos expuestos, revocamos la *Resolución* recurrida en el caso 24P-15 y la *Resolución* impugnada en el caso 24P-16, ambas emitidas el 9 de abril de 2024 y notificadas el 24 de abril de 2024. En consecuencia, se devuelven las causas de acción de Karen Pierantoni Quirós y Orlando Sotomayor Domínguez, respectivamente, ante la consideración de la Comisión de Investigación, Procesamiento y Apelación para la celebración de las correspondientes vistas administrativas en los méritos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[27] En específico la Sección 3.14 del estatuto uniformador, 3 LPRA sec. 9654.